UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE BARRINGTON GROUP LIMITED, INC., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-1813-B |
| CLASSIC CRUISE HOLDINGS S. DE. R.L. d/b/a REGENT SEVEN SEAS CRUISES, | § § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff The Barrington Group Limited, Inc.'s Motion for Summary Judgment (doc. 27). Upon consideration of the briefing, evidence, and applicable law, the Court concludes that though the summary judgment evidence establishes that enforceable contracts for certain of the goods at issue were formed, fact issues preclude entry of judgment as a matter of law on the entirety of Plaintiff's claims. Accordingly, the Court **GRANTS** Barrington's motion (doc. 27) in part and **DENIES** it in part.

I.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In this contract dispute, Plaintiff, The Barrington Group Limited, Inc. ("Barrington") seeks

---

[1] Where the facts are undisputed, the Court will cite to the parties' briefings (doc. 28 or doc. 31). Where facts are disputed, the Court will note the evidence to which the parties point in support, (either Pl.'s App. or Def.'s App.). The Court will not weigh or resolve conflicting factual or evidentiary claims, but will evaluate the evidence pursuant to the standard set forth in part II of this Memorandum Opinion and Order.

to recover from Defendant Classic Cruise Holdings S. De R.L. d/b/a Regent Seven Seas Cruises ("Regent" or "CCH") the total amount indicated on six invoices for the sale of goods that Barrington contends it specially manufactured for Regent.

  A.  *Overview of the Transactions Between the Parties*

Plaintiff Barrington imports, markets, and sells goods, including specially marked goods manufactured at the request of companies that purchase them for promotional purposes or for use as gifts to their customers. (doc. 28, p 4; doc. 31, p. 5). Barrington does not own or operate any manufacturing facilities, and instead procures its goods (which are frequently embossed, embroidered, or engraved with the customer's mark or logo) from other sources. (*Id*.). Barrington procures its leather goods from Barrington Handicrafts Co., a separate legal entity, that manufactures goods in a facility in Xiamen, China. Barrington's procures its non-leather goods either directly from manufacturers in the United States, or through Convergent Sourcing, a Chinese company that orders from manufacturers in China. (doc. 31, pp. 5-6).

Defendant CCH operates luxury cruise ships under the Regent brand name pursuant to a licensing and trademark agreement it entered on January 31, 2008. (doc. 31, p. 6). Barrington began providing goods to Regent Seven Seas Cruises ("Regent"), CCH's predecessor in interest, in 2002, when Regent began a passenger gift program. (doc. 28, p. 4; doc. 31, p. 6; Def.'s App. pp. 253-54). Over time, Barrington came to provide all of the goods used in Regent's passenger gift program, which included pre-cruise gifts, gifts given each segment of the cruise, and post-cruise gifts. (doc. 28, p. 4-5). Regent also purchased additional goods from Barrington that it sold to its passengers and were not part of the passenger gift program. (*Id*.).

At issue in this dispute are six invoices with due dates in mid to late 2008: numbers 78820,

79265, 80401, 82335, 80107, and 80109. (doc. 4, ex. 1-6; Def.'s App., pp. 11-16). The dispute arose on September 26, 2008, when the parties agree that Regent's purchasing manager, Roger Del Rio sent an email to Robert Vedrenne of Barrington's sales department stating "Orders have been cancelled." (doc. 28, p. 6, doc. 31, p. 9). The parties also agree that, as of the date of Mr. Del Rio's email, no payments had been made on the six invoices in question. (*Id.*). The parties vigorously dispute, however, which orders were cancelled and whether Mr. Del Rio's email amounted to repudiation.

Barrington contends that Mr. Del Rio's email was a repudiation of Regent's obligation to pay the amounts owed on the six outstanding invoices at issue. (doc. 28, p. 14). All or most of the goods represented by three of the six invoices (invoices 27720, 79265, and 80401) had been received by Regent as of Mr. Del Rio's September 26 email. (doc. 28, pp. 6-9; doc. 31, pp. 7-8). It is Barrington's position that by Mr. Del Rio's email, Regent "sought to cancel the order at a time when it could not legally do so," thus breaching those contracts. (doc. 33, p. 4). Barrington asserts that Regent's repudiation releases it from any obligation to deliver the remaining goods on those invoices and the others. (doc. 28, p. 14). Barrington further asserts that it has stored – and is prepared to deliver upon payment – the undelivered goods, including the goods that could not be cancelled that are included on invoices 82335, 80107, and 80109. (doc. 28, pp. 6-9).

Regent does not dispute which goods it has received, but offers a starkly different version of the facts leading up Mr. Del Rio's email. Regent contends that neither it nor its predecessor possessed any purchase orders, documentation, or other agreements that corresponded to any of the Barrington invoices. (doc. 31, p. 8-9). Regent further contends that it investigated and concluded that the prices for goods included on invoices 80107 and 80109 were too high for the quality of the

goods and that it would seek to cancel those invoices. (*Id.*). As a result, Regent claims that Mr. Del Rio telephoned Mr. Vedrenne on September 26 to inform him that, because of concerns over price, Regent would terminate invoices 80107 and 80109. (*Id.*). Regent contends that Mr. Del Rio's email stating "orders have been cancelled" was a follow-up to the earlier conversation about invoices 80107 and 80109, and in that context, it did not amount to a repudiation that could justify Barrington's refusal to deliver goods included on the remaining invoices. (*Id.*). Regent, in contrast, asserts that at the time of termination, "manufacture and procurement of only a limited number of items had begun." (doc. 31, p. 9; Def.'s App., pp. 106-24, 128-130, 226, 229-41).

On November 2, 2009, the parties representatives met in Florida to discuss pricing on the outstanding invoices.² (doc. 28, pp. 9-10; doc. 31, p. 110). Barrington contends that its representatives advised Mr. Del Rio that the orders could not be cancelled. (*Id.*). Barrington also submits the declaration of its CEO, David Dowdey, stating that Mr. Del Rio indicated that "he would consult with the management of Regent to determine whether Regent would change its position that it wanted to cancel the orders." (Pl.'s App., p. 303). The parties agree that, by email of October 8, Mr. Del Rio confirmed the cancellation, stating that Regent was "firm on cancelling all pending orders." (Def.'s App., p. 349).

Barrington insists that it acted reasonably to promptly cancel the manufacture of as many remaining products as possible. (doc. 28, pp. 16-17). Regent argues that Barrington did not act in a commercially reasonable manner following the termination to either terminate production or

---

² The meeting took place in Mr. Del Rio's office in Miami, and was attended by David Gowdey, Barrington's CEO, Robert Vedrenne, and Roger Del Rio. (doc. 28, p. 10; Def. App. p. 110).

-4-

otherwise mitigate its damages.[3] (doc. 31, pp. 9-12, 19-21).

The parties agree that on May 19, 2009, Regent made a payment of $282,488.19, but they dispute which obligations that payment discharges. Barrington contends that "Regent did not specify how it arrived at this amount, or what the payment was intended to cover or exclude." (doc. 28, p. 11). Regent argues that the payment "was tendered as payment for Invoice Nos.: 78820, 79265, and 80401 and constitutes the full payment for all goods, including those items not delivered, plus any late fees." (doc. 31, p. 13).

Regent also contends that, on the understanding that it had cancelled Invoice Nos. 80107 and 80109, it ordered substitute goods from another vendor. (doc. 31, p. 23-24). Regent argues that it is entitled to an offset in the amount of those purchases, $107,951.22. (*Id.*).

### B.   *The Invoices at Issue*

Barrington contends that, after accounting for the goods it was able to cancel and a partial payment by Regent in May 2009, it is owed a balance of $363,542.19. (doc. 28, p 19). The positions of the parties regarding the status of the goods in each of the invoices at issue are as follows:

Invoice No. 78820 bears a due date of September 19, 2008 for a total of $118,142.33. (doc. 4, Ex. 1).[4] Barrington argues that all of the goods – with the exception of the post-cruise gifts – were delivered and accepted by Regent in August 2008. (doc. 28, p. 6). Barrington insists that it procured the post-cruise gifts ("Desk Telescope") and placed them in storage, but did not deliver them to Regent "because Regent has repudiated its obligation to pay for any goods listed in Invoice

---

[3] For Invoice Nos. 80107 and 80109, Regent argues that no enforceable contracts were formed, and argues in the alternative that Regent cancelled those contracts and Barrington's later actions were not commercially reasonable. (doc. 31, p. 17).

[4] The invoice notes "if paid after 9/19/2008, new Amount Due will be $121,686.60." (*Id*).

No. 78820." (*Id.* at 7). Regent argues that its May 2009 payment discharged its obligations under Invoice No. 78820, and that Barrington's withholding of the remaining undelivered items is without justification. (doc. 31, p. 13).

Invoice No. 79265 bears a due date of October 3, 2008 for a total of $145,971.90. (doc. 4, Ex. 2).[5] Like the previous invoice, Barrington claims that all of the items, with the exception of the post-cruise gifts, were delivered and accepted by Regent in August 2008. (doc. 28, p. 7). Barrington placed the post-cruise gifts ("Custom 7" Digital Frame") in storage on account of Regent's alleged repudiation of its payment obligations, and insists that it is ready to deliver those goods upon payment. (*Id.*). Regent argues, as above, that its May 2009 payment satisfied its obligations under Invoice No. 79265 and that Barrington's continued withholding of the undelivered goods is without justification. (doc. 31, p. 13-14).

Invoice No. 80401 bears a due date of May 1, 2008 for a total of $10,146.15. (doc. 4, Ex. 3).[6] Barrington asserts that it delivered and Regent accepted all goods referenced on Invoice No. 80401 in July 2008. Regent does not dispute this, but argues that its May 2009 payment satisfied its obligations under the invoice. (doc. 31, p. 13).

Invoice No. 82335 lists an order date of August 19, 2008 and an amount due of $5,045.00. (doc. 4, Ex. 4).[7] Barrington asserts that it was able to cancel two of the three categories of goods ("Platinum Regent Rollerball" and "flashlight with Black Sevilla Case") prior to procurement or

---

[5] The invoice notes "if paid after 10/3/2008, new Amount Due will be $150,351.06." (*Id*).

[6] The invoice notes "if paid after 9/14/2008, new Amount Due will be $10,450.53." (*Id*).

[7] The invoice does not list a due date, and states that if paid after an unspecified date, the "new Amount Due will be $5,196.35." (*Id.*).

-6-

manufacture. (doc. 28, p. 8). Barrington states that it has placed the remaining items ("UBS Drive with Tin Case") in storage and did not deliver them on account of Regent's alleged repudiation of its payment obligations. (*Id.*). Regent argues that Invoice No. 82335 had a delivery date of September 25, 2008 and that Barrington failed to perform as required because it did not deliver the goods on time. (doc. 31, p. 14).

Invoice 80107 lists an order date of April 15, 2008 and an amount due of $218,850.00. (doc. 4, Ex. 5).[8] Barrington contends that though it attempted to cancel all of the goods on the invoice, it was able to cancel only two of them, the "Miniature Turkish Rugs" and the "Custom Jackets," but was not able to cancel the others. (doc. 28, p. 8). Barrington claims that it has procured the remaining items and placed them in storage, and that it is ready to deliver those goods upon payment. (*Id.*). Invoice 80109 lists an order date of April 15, 2008 and an amount due of $183,000.00. (doc. 4, Ex. 6).[9] Barrington was able to cancel procurement of one category of goods, the "Pre Cruise Gift IG Jump Drive," but argues it could not cancel the others, which it has placed in storage for delivery upon payment. (*Id.* at 9). Regent has not received or accepted any goods on those invoices. Regent does not dispute that it has made no payment on Invoice Nos. 80107 and 80109. Rather, Regent argues that no valid contract was formed as to those invoices[10] and that it was not aware of those invoices until shortly before it cancelled them on September 26. (doc. 31,

---

[8] The invoice does not list a due date, and states that if paid after an unspecified date, the "new Amount Due will be $225,415.50." (*Id.*).

[9] The invoice does not list a due date, and states that if paid after an unspecified date, the "new Amount Due will be $188,490.00." (*Id.*).

[10] Regent disputes that the correspondence of August 15 and September 10, 2008 – by which Barrington contends it notified Regent of its obligations – included Invoice Nos. 80107 and 80109. (*Id.*).

p. 14-15). In the alternative, Regent asserts in defense that Barrington failed to mitigate its damages. (*Id.*).

Barrington moved for summary judgment on its contract claims and requests that the Court find that the summary judgment evidence establishes that enforceable contracts were formed by each of the invoices; that Regent breached those contracts; and that it is entitled to recover the contract price indicated on the invoices. (doc. 27, p. 2). Regent opposes Barrington's motion by pointing to what it contends to be material facts regarding issues on which Barrington bears the burden of proof, including contract formation, breach, and damages . Regent further contends that the summary judgment evidence establishes its affirmative defenses, on which it bears the burden of proof. (doc. 30, p.2). The first task before the Court is to evaluate the summary judgment evidence in light of the burdens set forth below to determine whether Barrington has established the elements of its claims as a matter of law. Should the court conclude that Barrington has done so, it must determine whether Regent has raised material facts on its defenses that nevertheless preclude entry of judgment as a matter of law for Barrington.

## II.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party may move for summary judgment "on all or any part of the claim," and Rule 56(d) empowers the Court

to "determine what material facts are not genuinely at issue," where summary judgment is not rendered on the whole action, so as to clarify the triable issues that remain. Fed. R. Civ. P. 56(d); *See MetroPCS Wireless v. Virgin Mobile USA, L.P.*, No. 3:08-CV-1658-D; 2009 WL 2075205 at *10-11 (N.D. Tex. Sep. 25, 2009) (finding that genuine issues of material fact exist for certain elements of claim but not for others).

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). To meet this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Hawkins Pro-Cuts, inc. v. DJT Hair, Inc.*, No. 3-96-CV-1728-R, 1997 WL 446458 at *3 (N.D. Tex. July 25, 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986)). A plaintiff is entitled to judgment as a matter of law where it "present[s] sufficient summary judgment evidence to establish each element of its cause of action." *KS Fin. Group, Inc. v. States & Little Mortgage Co.*, No. 94-20852, 1995 WL 581872 at *4 (5th Cir. 1995). Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp.*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,'" . . . by 'conclusory allegations,'" . . .by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz*

*v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). A non-moving defendant may prevail by either raising genuine issues of material fact on an element of the plaintiff's claim or by establishing an affirmative defense as a matter of law. *Bassett v. Am. Nat. Bank*, 145 S.W.3d 692, 696 (Tex. App. – Fort Worth, 2004, no pet.). "A defendant relying on an affirmative defense in opposing a summary judgment must come forward with summary judgment evidence sufficient to raise an issue of material fact on each element of the defense." *Id.* The Court will not make credibility determinations, weigh the evidence, or draw inferences but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant Defendants. *Id.* at 301; *Cooper Tire & Rubber v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005). The Court will "resolve factual controversies in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the non-moving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075.

### III.

### ANALYSIS

Barrington moves for summary judgment on the grounds that enforceable contracts for the sale of specially manufactured goods the were formed, as represented by the six invoices at issue, and that Regent breached those contracts by repudiating its payment obligations and attempting improperly to cancel those contracts. (doc. 28, p. 11). Regent points to evidence that it contends demonstrate material facts which preclude summary judgment, including that it paid Invoice Nos. 78820, 79265, and 80401; that Barrington repudiated Invoice No. 82335 by failing to deliver the

-10-

goods; and that if valid contracts were formed by Invoice Nos. 80107 and 80109, Regent timely cancelled them. (doc. 31, p. 1-2). Regent also asserts that it has presented evidence to support several affirmative defenses, which preclude entry of summary judgment on Barrington's behalf.

To establish a breach of contract claim under Texas law, Barrington must establish (1) the existence of a valid contract; (2) its performance or tendered performance; (3) Regents breach; and (4) its resulting damages. *See Dorsett v. Cross*, 106 S.W.3d 213, 217, (Tex. App. – Houston [1st Dist.] 2003, pet. Denied). The Court will first address the threshold issue on which Barrington's motion depends: whether the invoices at issue constitute enforceable contracts.

A.   *The Invoices as Evidence of Contract Formation*

The parties agree that the invoices themselves are the only writings that evidence the transactions at issue. (doc. 28, p. 11; doc. 31, p. 1, 14). Barrington has not produced evidence of any purchase orders, written agreements, or other documents that indicate Regent's agreement to the terms described in the invoices. It is beyond dispute that each of the invoices is for the sale of goods for the price of $500 or more. (*Id.*). Thus, the first issue presented in Barrington's motion for summary judgment is whether the invoices satisfy the exceptions to the statute of frauds[11] set forth in Section 2.201 of the Texas Business and Commerce Code ("UCC"). The burden of establishing facts that remove the contracts from the statute of frauds rests with the plaintiff. *Otto Vehle & Reserve Law Officers Ass'n v. Brenner*, 590 S.W.2d 147, 152 (Tex. Civ. App. – San Antonio, 1979,

---

[11] The statute of frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. . ." Tex. Bus. & Com. Code Ann. § 2.201(a) (2009). Barrington does not claim to have any writing signed by Regent or its predecessors.

no writ).

      i.      Subsection 2.201(b)

Barrington first points to Section 2.201(b) of the UCC, arguing that the invoices provided written confirmation of agreements they represented. (doc. 28, p. 11-12). That section provides:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

Tex. Bus. & Com. Code Ann. § 2.201(b) (2009). The parties do not dispute that the invoices are sufficient against the sender, Barrington, or that the parties are merchants. *See Cox Eng'g Inc. v. Funston Mach. & Supply Co.*, 749 S.W.2d 508, 510 (Tex. App. – Fort Worth 1988, no writ) (noting those requirements for application of the "merchant's exception").

Barrington argues that it "sent the Invoices at issue on multiple occasions, the last two occasions being August 15, 2008, and September 10, 2008" and that "there has never been any document which objected to or attempted to cancel Invoice Nos. 78820, 79265, 80401, or 82335." (doc. 28, p. 12). Barrington further asserts that the first objection it received regarding the remaining invoices (80107 and 80109) was sent on September 26, more than ten days following its transmittal of the confirmatory invoices. (*Id.*).

Regent does not deny that it received and made no timely objection to Invoice Nos. 78820, 79265, 80401, or 82335. Regent does, however, argue that it did not learn of Invoice Nos. 80107 and 80109 until shortly before it sent its September 26 email to cancel them. (doc. 31, p. 9). Further, Regent argues that the communications Barrington sent on August 15 and September 10 did not include, as Barrington asserts, Invoice Nos. 80107 or 80109. (*Id.* at 15).

The undisputed summary judgment evidence, viewed in the light most favorable to Defendants, together with Defendants' admissions, establishes that the "merchant's exception" applies to Invoice Nos. 78820, 79265, 80401, and 82335. Accordingly, because material facts are not genuinely at issue regarding the element of contract formation for those invoices, the Court **GRANTS** Barrington's motion in part in this regard ony.

The evidence does, however, establish as a matter of law that the exception applies to Invoice Nos. 80107 or 80109. The record does not contain conclusive evidence establishing if and when those invoices were sent. As a result, the Court cannot conclude that Barrington sent those invoices within a reasonable time or that Regent's objection was untimely. *See Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 705 (Tex. App. – Houston [1st Dist.] 1988, writ denied) ("Whether the circumstances of a particular case fall within an exception to the statute fo frauds is generally a question of fact. Thus, it is usually for the jury to decide whether the parties were merchants, whether the writing was sent within a reasonable time, and whether the party receiving it had reason to know its contents."). As a result, Barrington is not entitled to judgment as a matter of law on its claims based on Invoice Nos. 80107 or 80109.

  ii. Subsection 2.201(c)(3)

Barrington claims that Subsection 2.201(c)(3) also provides authority for determining that many of the invoices at issue form enforceable contracts. (doc. 28, p. 13). That provision provides that a contract that does not satisfy the statute of frauds is nevertheless enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2.606)." Tex. Bus. & Com. Code Ann. § 2.201(c)(3) (2009).

Barrington asserts that "the goods referred to in Invoice Nos. 78820, 79265, 80401 [and]

-13-

82335 [ ] have all been shipped to and received by Regent," arguing that Subsection 2.201(c)(3) applies to render those invoices enforceable contracts. (doc. 28, p. 13). Regent admits that certain goods referred to in Invoices 78820, 79265, and 80401 have been received,[12] and claims that it has paid for them. (doc. 31, p. 13). Accordingly, the Court finds that Subsection 2.201(c)(3) provides an additional ground for enforcing a contract for those goods that were received and accepted. Because no triable issue remains regarding the element of contract formation for those goods received and accepted, the Court **GRANTS** Barrington's motion in part.

Regent asserts that the goods referred to in Invoice No. 82335, on the other hand, have not been received or accepted, arguing specifically that Barrington did not timely deliver them. (*Id.* at 14). Barrington's own briefing indicates that it has placed those goods in storage and that they have not yet been delivered. (doc. 28, p. 8). Thus, Regent has identified material facts related to the delivery and acceptance of those goods. The Court cannot conclude that an enforceable contract exists for the goods referred to in Invoice No. 82335 and thus Barrington's cannot prevail on its motion in that respect.

      iii.     Subsection 2.201(c)(1)

Barrington contends that an enforceable contract was formed for the sale of the goods referred to on Invoice Nos. 80107 and 80109 because those goods were "all specially manufactured for Regent, and Barrington had made commitments for their procurement before September 26, 2008." (doc. 28, p. 13). This argument is grounded in Subsection 2.201(c)(1) of the UCC, which provides that a contract a contract that not satisfy the statute of frauds is enforceable if:

---

[12] The parties agree that the post-cruise gifts referred to in Invoice Nos. 78820 and 79265 have not been received or accepted. *See supra,* p. 5-6.

>   the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement.

Tex. Bus. & Com. Code Ann. § 2.201(c)(2) (2009).

Regent argues that Barrington has not submitted evidence sufficient to establish that the goods referred to in Invoice Nos. 80107 and 80109 were specially manufactured or that Barrington made either a substantial beginning to their manufacture or commitments for their procurement. (doc. 31, p. 15-16).

In determining whether the or not the goods are specially manufactured, the "crucial inquiry is whether the manufacturer could sell the goods in the ordinary course of his business to someone other than the original buyer." *Impossible Elec. Techniques, Inc. v. Wackenhut*, 669 F.2d 1026, 1037 (5th Cir. 1982). The focus of the exception is on the goods themselves. "If with slight alterations the goods could be so sold, then they are not specially manufactured; if, however, essential changes are necessary to render the goods marketable by the seller to others, then the exception does apply." *Id.*

Barrington contends that the products at issue were specially manufactured to bear Regents marks or logo. (doc. 28, p. 13). In opposition, Regent points to evidence that with minor alterations, those marks or logos could be removed or covered up, making it possible to resell the goods. (doc. 31, p. 23). This fact dispute is material, rendering summary judgment inappropriate; the Court is not in the position to determine whether the removal of the characteristics that potentially render the subject goods "specially manufactured" would be slight alterations. Further, Barrington has not submitted conclusive evidence that, at the time of Regent's attempted

cancellation, it had made "either a substantial beginning of their manufacture or commitments for their procurement." Tex. Bus. & Com. Code Ann. § 2.201(c)(2). Thus, Regent has met its burden in opposition, and the Court cannot conclude as a matter of law that enforceable contracts were formed with respect to Invoice Nos. 80107 and 80109.

    B.    *Breach*

Barrington argues that "Regent breached the contracts by not paying the amount it owes for the goods." (doc. 28, p. 14). Barrington further insists that by Mr. Del Rio's email, Regent repudiated its obligations, thus excusing Barrington from its obligation to deliver the remaining goods. *Id*. Barrington admits that "Regent made a partial payment of $282, 488.19 on May 20, 2009," but contends that Regent "did not specify how it arrived at this amount, or what the payment was intended to cover or exclude." (*Id*. at 14, 11). As a result, Barrington concludes that because Regent "has not paid the balance of the $363,542.19 which is owed to Barrington for the goods," it is entitled to judgment as a matter of law on the element of breach. (*Id*. at 14).

Regent responds that it is not in breach of Invoice Nos. 78820, 79265, or 80401 because its partial payment "was tendered as payment for Invoice Nos.: 78820, 79265, and 80401 and constitutes the full payment for all goods, including those items not delivered, plus any late fees." (doc. 31, p. 13). It further argues that its payment obligation on Invoice No. 82335 was excused by Barrington's failure to deliver the goods on time. (*Id*. at 14). Finally, Regent contends that its payment obligations on Invoice Nos. 80107 and 80109 were extinguished by a timely termination. (*Id*. at 17). Regent argues that these facts are supported by evidence and preclude summary judgment on the element of breach. (doc. 30, p. 2).

A claim for breach depends upon tender of performance by the plaintiff. *Valero Marketing*

*& Supply Co. V. Kalama Int'l*, 51 S.W.3d 345, 351-52 (Tex. App. – Houston [1st Dist.] 2001, no pet.). The Court concludes that fact issues preclude a grant of summary judgment on the issue of breach. The Court cannot conclude as a matter of law that Regent breached its payment obligations under Invoice Nos. 78820, 79365, and 80401 despite its partial payment to purportedly settle those debts. Moreover, the Court cannot conclude as a matter of law that Regent repudiated its payment obligations, particularly in light of the undelivered post-cruise gifts from those invoices and the remaining fact issues that attend the scope and meaning of Mr. Del Rio's cancellation email.

Regent additionally presented evidence that Barrington did not tender performance by timely tendering the goods referred to in Invoice No. 82335. Regent has additionally pointed to material facts that preclude the Court from ruling that Mr. Del Rio's email constituted a breach by repudiation. The Court need not address the element of breach for the remaining invoices, because fact issues remain regarding the formation of enforceable contracts, as discussed in Part 3.A of this Memorandum Opinion.

Regent has met its burden of identifying genuine issues of material fact that preclude summary judgment. The Court may not resolve disputed issues of fact and thus cannot determine as a matter of law that Regent breached its contractual obligations. In light of this result, the Court does not reach the remaining issues urged in the parties' briefing. Because the Court concludes that Barrington has not established each element of its claim as a matter of law, it need not address the issue of damages or determine whether Regent has raised material facts on its defenses that nevertheless preclude entry of judgment as a matter of law for Barrington

**IV.**

CONCLUSION

For the reasons stated above, the Court **GRANTS** Barrington's motion for summary judgment in part and **DENIES** it in part. (doc. 27). By its motion for summary judgment, Barrington asked that the Court conclude as a matter of law both that enforceable contracts were formed and that Regent breached those contracts by repudiating its payment obligations and attempting improperly to cancel those contracts. The Court concludes that the summary judgment evidence establishes that enforceable contracts were formed for the sale of those goods included on Invoice Nos. 78820, 79265, 80401, and 82335, and grants Barrington's motion in that respect. The Court cannot enter judgment as a matter of law on Barrington's claims, because fact issues remain regarding contract formation for Invoice Nos. 80107 and 80109 and regarding whether Regent repudiated or otherwise breached its contractual obligations. Accordingly, the Court denies Barrington's motion in all other respects.

**SO ORDERED.**

**DATED JANUARY 15, 2010**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE